The committee on Elections, to whom was referred the petition of I-Ienry Jones for the seat now held by Lewis P. Loring as representative from the fourth Plymouth district, having met the parties and heard their evidence and the arguments of counsel, submit the following report: —
The said district is composed of the towns of Hingham, Hull and Cohasset, and is entitled to one representative.
The petition alleged, and it was not disputed, that the total vote for representative in said district at the annual state election was declared as follows : —
For Lewis P. Loring,.443
For Henry Jones,.441
For Thomas Stephenson,.64
*37 And that at a recount duly had the vote was declared as follows: —
For Lewis P. Loring,.444
For Henry Jones,.442
For Thomas Stephenson,.64
The difference between the two counts was due to the discovery at the recount of an additional ballot for Mr. Jones which was originally overlooked and to the admission of a ballot for Mr. Loring which was originally rejected. These ballots are hereinafter referred to as Nos. 22 and 23 respectively.
The petitioner alleged “that in said election in said towns of Hingham and Cohasset, and at the recount of votes in said towns, certain votes which were marked illegally, improperly and in violation of the provisions of chapter 436 of the Acts of 1888 and acts in amendment thereto, were illegally, improperly and irregularly counted for said Lewis P. Loring and for said petitioner, and that if the aforesaid votes are not counted for said Loring and said Jones, your petitioner received-a majority of votes cast in said district . . . and was duly and legally elected.”
The petition contained proper specifications of the alleged defective ballots, and a witness who represented the petitioner at the recount in Hingham and Cohasset testified to the number and marking of said ballots substantially as alleged.
The sitting member, on the other hand, produced evidence which tended to contradict the petitioner’s testimony as to Hingham and Cohasset ballots, and also further evidence, which was not contradicted by the petitioner, of additional informal ballots in all the towns of the district.
At the conclusion of the testimony counsel for the petitioner contended that, although the committee might not be satisfied from the evidence that the petitioner should be declared elected, a prima facie case had nevertheless been made out which entitled the petitioner to have the'ballots examined and recounted by the committee.
The rule governing applications for a recount of votes by the House is well established by a long line of decisions, and is, perhaps, best stated as follows : —
“ The right of recounting votes will be exercised only upon satisfactory preliminary proof of such substantial facts or well-grounded causes of suspicion as would induce strong conviction that fraud or mistake, prejudicial to the contestant, might appear upon such examination; and in the absence of such preliminary *38 proof the returns of city and town officials should stand as correct.” Rice v. Welch, Loring & Russell’s Election Cases, 128.
The committee find nothing in our present Ballot Act, or in the character of the questions that arise under it, that should lead to any modification of the above rule. Its object is clear, — to prevent candidates who are defeated by a close vote from coming to the House for a recount upon the mere possibility that it may develop something in their favor. The rule, therefore, is that the petitioner must show substantial facts tending to the conclusion that a recount would or might change the result. The simple fact that the vote is close does not, of itself, affect the question.
As applied to the present case the rule would require that the petitioner should show such substantial facts or well-grounded causes of suspicion as would induce strong conviction that illegal or fatally defective votes had been cast in the district, and that their number was sufficient to change the result. The petitioner is not required to prove this beyond a reasonable doubt; but, on the other hand, he is not entitled to have the case considered upon his ex parte testimony; it must appear upon the whole preliminary proof that there is probable cause for believing that a recount might change the result.
Adopting this rule, and construing the testimony with considerable latitude in the petitioner’s favor, the committee find that the following “ informal ” ballots were cast and counted in said district.
Nos. 1 to 11. Ballots with a cross mark between residence and political designation : Loring, 7. Jones, 4.
Nos. 12 and 13. Ballots with a single oblique stroke at the right of the name and in the compartment with it, or in the square : Loring, 1. Jones, 1.
Nos. 14 and 15. Ballots with a cross between Christian name and surname: Loring, 1. Jones, 1.
Nos. 16 to 20. Ballots with a cross mark at the left of the name: Loring, 3. Jones, 2.
No. 21. Ballot with a caret, or inverted V, in the square: Loring, 1.
No. 22. Ballot with a character consisting of two oblique strokes, like a rude letter Y, in the square : Jones, 1.
No. 23. Ballot with a figure 2 in the square, other candidates being marked with other figures : Loring, 1.
In each of the above-described ballots (except No. 23) the voter had marked for candidates for other offices in the same manner throughout his ballot. No evidence was offered to prove that any of these marks were intended to .reveal the identity of the voter.
*39 Upon the question whether the above ballots were properly counted as being in substantial compliance with the requirements of the Ballot Act (Acts of 1889, chap. 418) the committee report their conclusions, so far as they are material, as follows : —
Nos. 1 to 11, being of the same character as those described in their former report, accepted by the House (Shepard v. Sears, ante, p. 30), are governed by that case, and were properly counted.
Nos. 12 to 15, being equally divided between the candidates, do not affect the result.
Nos. 16 to 20. As to the validity of these ballots the committee entertain no doubt. Section 23 of the Ballot Act, which is the only section that contains directions to the voter how to mark his ballot, provides that he “ shall prepare his ballot by marking in the appropriate margin or place a cross opposite the name of the candidate of his choice. . . .” It does not say to the right of the name ; and although section 10 provides that “the ballots shall be so printed as to give to each voter a clear opportunity to designate by a cross mark in a sufficient margin at the right of the name his choice of candidates,” it is not believed that these sections, one containing directions to the secretary of the Commonwealth and the other containing directions to the voter, can be fairly construed together so as to bind the voter to an exact observance of this matter of detail. If the directions in the statute are not explicit, the voter cannot be held to the most rigid construction that can be put upon them; on the contrary, when the question is as to nullifying, the will of the voter, considerable latitude may fairly be allowed to a voter who seems to have considered that “the appropriate margin” was that margin which is nearest the candidate’s name, “ opposite ” which he is directed to mark.
Although the English Ballot Act is more explicit than our own, and directs the voter to “place a cross on the right-hand side opposite the name of each candidate for whom he votes,” it was nevertheless held in the carefully considered case of Woodward v. Sarsons, L. R. 10, C. P. 733, that a ballot marked with a cross at the left was valid, as substantially indicating that the voter intended to vote for the candidate against whose name it was placed. In cases in which crosses at the left have not been counted the reason generally given is that the mark in that place may be an identifying one, a reason which the committee believe does not apply to this case.
Nos. 21 and 22 may be considered together, and the committee are of opinion that these marks, though carelessly made, are in substantial compliance with the statute. Even in courts that have been inclined to place the strictest construction upon the *40 Ballot Act the rule has been adopted that rough or imperfect crosses, or marks involving the use of more than a single stroke, are to be treated as crosses ; thus in Robertson v. Adamson, 3 Ct. of Sess. 978, certain marks with a loop at the top, like a rude figure 1 or 7, were counted, and in Hawkins v. Smith, 8 Can. Sup. Ct. 676, a character described as an inverted V was held valid. The committee believe that a rule as liberal as this may safely be adopted here.
The committee are further of the opinion that none of the marks above referred to are liable to any reasonable suspicion of being upon their face identifying or preconcerted marks. They are evidently the result of carelessness, not of corruption.
The exercise of such ingenuity as might be expected of a voter who was disposed, by corrupt prearrangement, to put a distinguishing mark upon his ballot, would readily devise some method of identification that would be equally clear to a party to the arrangement, and vastly more difficult of detection by the election officers, or others not parties to it. That such a voter should risk the validity of his ballot by marking it so conspicuously as to call immediate attention to the peculiarity seems hardly within the range of probability.
It would further seem that such an over-suspicious interpretation of irregular marks would afford counting boards an excuse for the rejection of informal ballots rather than any valid reason for so doing, and would result in the disfranchisement of honest though heedless voters rather than the punishment of unscrupulous ones.
In the present case, at least, there being no extrinsic evidence that the secrecy of the ballot has been violated, and the peculiarities of marking being common to the ballots for each candidate, the committee believe that the argument referred to is entitled to no weight.
The marks are, further, of such a character as clearly to reveal the voter’s intention. They are marks of choice, not of cancellation. There being three candidates upon the ballot, of whom only one was to be elected, the voter has in each instance set his mark opposite the name of one. The only reasonable inference is that he intended to vote for that candidate. According to the general rule applicable to the construction of election statutes, and according to the spirit of this act as manifested in section 26, the intent of the voter must govern, and his ballot be counted.
It is, therefore, the judgment of the committee that the ballots referred to, being in substantial compliance with the requirements of the statute, and not open to the objection of violating its spirit, and furthermore, clearly revealing the intent of the voter, were properly counted for the respective candidates.
[The report of the committee was accepted.]
As to ballot No. 23 it is not necessary to express an opinion, for even if it be rejected, the sitting member would still have a plurality of one vote.
The committee are therefore of opinion that no satisfactory evidence has been produced to show probable cause for believing that a sufficient number of illegal ballots were cast at said election to change the result.
They therefore unanimously recommend that the petitioner have leave to withdraw.